**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

v.

**THE WINDSOR GROUP, INC., and Windsor Insurance Company, Respondents.**

**No. ED 81237.**

Missouri Court of Appeals, Eastern District, Division One.

Feb. 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 2003.

---

1. Unless otherwise indicated, all other statutory references are to RSMo 2000.

Nelson L. Mitten, Clayton, MO, for appellant.

David P. Bub, St. Louis, MO, for respondent.

ROBERT G. DOWD, JR., Presiding Judge.

General Motors Acceptance Corporation (GMAC) appeals from the trial court's judgment in favor of The Windsor Group, Inc., and Windsor Insurance Company (collectively referred to as Windsor). GMAC argues the trial court erred (1) in finding the insurance policy is void because of material misrepresentations by the vehicle owner, and (2) in entering judgment in favor of Windsor because Windsor waived any right to forfeiture of the insurance policy. We reverse and remand.

In July 1996, Roger Roderick (Roderick) purchased a 1996 Chevrolet Corvette, which he financed through GMAC Flexible Finance Plan. Pursuant to the finance plan, Roderick was obligated to provide property damage insurance for the Corvette and GMAC was to be listed as the loss payee under the policy.

On August 21, 1996, Roderick completed an application for insurance on the Corvette and was asked a series of questions by Sam Bevell (Bevell), an insurance agent for Windsor. Bevell states that Roderick did not know the number of his traffic violations and specifically gave Windsor authority to obtain copies of his driver history.[1] In addition, Bevell wrote on the application "Please Go By State Record!" so that Windsor's underwriters would look at Roderick's state records when determining his traffic violation history.[2]

Prior to issuing the Roderick policy, Windsor discovered Roderick had three additional speeding violations as well as seven violations for driving with a suspended/revoked license. In addition, Windsor learned at this time that Roderick's license was revoked since May 25, 1995, and that it was not to be reinstated until August 1997. On August 27, 1996, Windsor issued an insurance policy to Roderick.

On August 25, 1996, four days after the application was executed, the Corvette was involved in a one-vehicle accident. The damage to the vehicle was $50,060.34, rendering it a total loss. Roderick subsequently submitted a claim to Windsor for property damage to the Corvette resulting from the accident. Windsor voided Roderick's insurance policy *ab initio* on October 16, 1996, and denied his claim based on Roderick's failure to disclose the extent of his driving history and lack of a valid operator's license. GMAC also presented a claim under the Roderick policy, which Windsor denied pursuant to the loss payee

clause of the policy that gave GMAC no independent rights of recovery under the Roderick policy.

GMAC filed a declaratory judgment action in the Circuit Court of St. Louis County against Windsor relating to the insurance coverage under the policy. The trial court first entered judgment on a motion to dismiss in favor of Windsor and against GMAC on its claims against Windsor. The trial court subsequently entered a final judgment disposing of all remaining claims. GMAC appealed. On appeal, we reversed the first judgment of the trial court and remanded this cause for further proceedings per our mandate. *General Motors Acceptance Corporation v. Windsor Group, Inc.*, 2 S.W.3d 836 (Mo.App. E.D.1999) (finding that (1) GMAC had standing as a third-party beneficiary to bring a declaratory judgment action, and (2) GMAC's petition adequately demonstrated a basis for relief). On remand, the trial court entered its findings of fact and conclusions of law in favor of Windsor on all counts based upon a joint stipulation of facts. GMAC now appeals.

 On appellate review, the trial court's order will be affirmed unless there is no substantial evidence to support the decree, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Ortmann v. Dace Homes Inc.*, 86 S.W.3d 86,

---

1. As to the status of Roderick's license, the application only has a section that reads, "Lic. Sus." below which was placed an "N." Bevell states that he "thinks" Roderick said "No" when asked if his license was suspended or revoked.

2. It is Windsor's procedure to obtain a driving record when it receives a policy application. Roderick's driving record revealed numerous additional traffic violations and the revocation of his license. Despite this information, Windsor issued the Roderick insurance policy on August 27, 1996.

88 (Mo.App. E.D.2002). However, where the facts are derived solely from written documents such as pleadings, stipulations, exhibits, and depositions, we decide only whether the trial court drew the proper legal conclusions from the facts stipulated. *Glass v. Missouri Property Ins. Placement Facility*, 912 S.W.2d 653, 656 (Mo. App. S.D.1995). Therefore, we must address the consequences of the stipulated facts; and if those facts show that GMAC is not entitled to relief, the judgment must be affirmed. *Id.* Finally, even where the facts are derived from stipulated exhibits and agreements, we "must accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence." *Sachs Elec. Co. v. HS Const. Co.*, 86 S.W.3d 445, 453 (Mo.App. E.D. 2002).

Because GMAC's second point is dispositive, we need not address its first point.

In its second point, GMAC argues the trial court erred in entering judgment in favor of Windsor because Windsor waived any right to forfeiture of the insurance policy. We agree.

 An insurer, by its conduct, may waive defenses otherwise available under a policy. *Calvert v. Safeco Insurance Co. of America*, 660 S.W.2d 265, 268 (Mo.App. W.D.1983). Moreover, "when the policy contains a condition which renders it voidable at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition and to execute a binding contract rather

than to have deceived the insured into thinking he was insured when in fact he was not, and to have taken his money without consideration." *Bledsoe v. Farm Bureau Mut. Ins. Co.*, 341 S.W.2d 626, 632 (Mo.App.1960).

In its findings of fact and conclusions of law, the trial court adopted the stipulated facts that incorporated by reference the deposition testimony of both Bevell and Michaela Savill (Savill), an underwriter for Windsor. The trial court found that Roderick told Windsor's agent Bevell that his license was not revoked or suspended, that the information he provided in his application was false, and that the application was not reviewed by a Windsor underwriter authorized to make coverage decisions until after August 27, 1996. The trial court also found that Roderick's misrepresentations were material to Windsor's issuance of the policy and that Windsor had a right to rely on the truthfulness of the information Roderick provided in his application. In finding for Windsor, the trial court concluded there was no coverage for Roderick and that GMAC, as loss payee, possessed no independent rights of recovery under the policy, therefore, not entitling them to recovery.[3]

Even if we were to concede that there was evidence within the stipulated facts to support the trial court's judgment that Roderick made material misrepresentations within the insurance application, the stipulated facts also show Windsor waived any claims of forfeiture of the policy.[4]

---

**3.** In its conclusions of law, the trial court ruled that GMAC is a loss payee under an open mortgage clause, and that it therefore has no independent rights of recovery from that of a named insured. This ruling is inconsistent with our earlier decision in this case wherein we found GMAC had standing as a third-party beneficiary to bring a declaratory judgment action to determine its rights under the Roderick policy.

**4.** Windsor's attempt to argue that GMAC did not properly preserve the issue of waiver is without merit. Implicit, if not explicit, in declaring GMAC's rights would be determining whether Windsor had waived any grounds for denial of coverage. Here, the pleadings properly presented this issue to the trial court.

First, Savill stated it was Windsor's procedure to obtain a complete driving history before issuance of any policy. Second, Bevell stated it was his intent for Windsor to rely on the state records to determine Roderick's traffic violations and not to rely solely on the insurance application. For this reason, he specifically put the phrase "Please Go by State Record!" on the application. Third, the stipulated facts reveal that prior to issuing the policy, Windsor was aware of Roderick's multiple traffic violations as well as the revocation of his license on May 24, 1995. Fourth, as reflected by Windsor's own policy, Windsor specifically increased the amount of premiums charged to Roderick based upon the information regarding his poor driving record. Specifically, the Roderick policy lists eleven traffic violations amounting to eighteen points against his driver's license in less than a two-year period, which included four convictions for driving with a suspended license. As Windsor issued the policy with full and complete knowledge of Roderick's driving record, by its conduct, Windsor waived any defense based upon misrepresentation. Point granted.

The judgment of the trial court is reversed and remanded for entry of judgment in favor of GMAC.

HOFF, J., and DRAPER, J., concur.